IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EARL R. PITTS,

                Plaintiff,

     vs.                            Civil Action 2:13-cv-740
                                    Judge Frost
                                    Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

<u>REPORT AND RECOMMENDATION</u>

**I.  Background**

     This is an action instituted under the provisions of 42 U.S.C. §
405(g) for review of a final decision of the Commissioner of Social
Security denying plaintiff's applications for child's insurance
benefits based on disability, disability insurance benefits, and
supplemental security income.  This matter is now before the Court on
*Plaintiff Earl R. Pitts' Statement of Specific Errors* ("*Statement of
Errors*"), Doc. No. 14, the Commissioner's *Memorandum in Opposition*,
Doc. No. 19, and *Plaintiff's Reply*, Doc. No. 20.

     Plaintiff Earl Raymond Pitts filed his application for child's
insurance benefits on May 27, 2008, and his applications for
disability insurance benefits and supplemental security income on
February 1, 2010, all alleging that he has been disabled since June
15, 2007.  *PAGEID* 234, 236, 243.  The applications were denied
initially and upon reconsideration, and plaintiff requested a *de novo*
hearing before an administrative law judge.

An administrative hearing was held on January 17, 2012, at which plaintiff, represented by counsel, appeared and testified, as did Jerry Olsheski, Ph.D., who testified as a vocational expert.  *PAGEID* 81.  In a decision dated February 21, 2012, the administrative law judge concluded that plaintiff was not disabled prior to December 5, 2010, the date he attained age 22, or any time through the date of the administrative decision.  *PAGEID* 73.  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 6, 2013.  *PAGEID* 45.

Plaintiff married in July 2010 and attained the age of 22 in December 2010.  *PAGEID* 62.  Plaintiff was 23 years of age on the date of the administrative law judge's decision.  *See PAGEID* 73, 236.  Plaintiff met the special earnings requirements of the Social Security Act on the alleged onset date and continued to meet those requirements through September 30, 2009.  *PAGEID* 62.  He has not engaged in substantial gainful activity since June 15, 2007, his alleged onset date.  *Id.*

## II.  Medical Evidence[1]

Plaintiff treated with Othello Repuyan, M.D., from January 5, 1989 until October 12, 2006.  *PAGEID* 406.  Plaintiff "was followed in [Dr. Repuyan's] office for medication management of [attention deficit hyperactivity disorder ("ADHD")] only."  *PAGEID* 406.  Dr. Repuyan

---

[1]  Plaintiff's *Statement of Errors* challenges the administrative law judge's credibility determination and evaluation of the opinions relating to plaintiff's mental impairments; plaintiff has not challenged the administrative law judge's findings in regard to plaintiff's physical limitations.  *See Statement of Errors*, p. 5.  The Court will therefore limit its discussion to the issues presented in plaintiff's *Statement of Errors*.

2

reported that plaintiff had been in special classes in school and received generally failing grades in required classes. *Id*. Dr. Repuyan also reported that plaintiff had been suspended from school or placed in juvenile detention for fighting on numerous occasions and he "often felt others were responsible for his problems." *Id*.

Plaintiff underwent a psychiatric evaluation by Patricia A. Gainor, M.D., at Six County, Inc., on June 13, 2003. *PAGEID* 419-20. Dr. Gainor noted that plaintiff had been in special education classes, had "questionable" grades, had been suspended that year for talking back, was on probation for stealing a bicycle, and had spent six days in juvenile detention for fighting and running away. *PAGEID* 419. Upon examination, plaintiff "showed clear goal directed speech and fairly good eye contact." *Id*. Plaintiff "was offhand and casual in his sense of relatedness," "[e]xternalized all of his problems," and had no affective symptoms or signs of mania. *Id*. Dr. Gainor diagnosed "attention deficit hyperactivity disorder, ODD, conduct disorder." *PAGEID* 420. Plaintiff attended two group counseling sessions at Six County, Inc., in June 2004. *PAGEID* 582-83.

School records indicate that plaintiff attended an alternative school, had an IEP for classroom aide and special services, and received special education for emotional disturbance. *PAGEID* 465-70. Plaintiff was suspended three times during the 2002-2003 school year. *PAGEID* 422. A November 29, 2005 evaluation notes that plaintiff was "a very capable student" but that his academics were affected by his behavior. *PAGEID* 477. In November 2002, plaintiff achieved an IQ

3

score of 81 and in November 1999, plaintiff achieved an IQ score of 90. *PAGEID* 478. A February 23, 2010 evaluation noted weaknesses in "reading comprehension, basic reading and problem solving – slow to process information," but that plaintiff had a "good attitude." *PAGEID* 483.

Todd Finnerty, Psy.D., a state agency psychologist, reviewed the record on July 23, 2008, and again in February 2, 2009, and opined on both occasions that there was insufficient evidence to make a disability determination. *PAGEID* 500-13, 584-96.

Plaintiff underwent a psychiatric emergency screening at Six County, Inc., on January 5, 2009, while serving a 20 month sentence for criminal damaging. *PAGEID* 577-78. Plaintiff reported problems with sleep, feeling paranoid that other inmates may hurt him, racing thoughts, and rapid mood swings. *PAGEID* 577. On examination, plaintiff was found to be anxious, oriented x4, paranoid, and cooperative. *PAGEID* 578. Psychomotor agitation was present, plaintiff complained of racing thoughts, and demonstrated fair judgment, fair insight, and fair impulse control. *PAGEID* 577-78. Plaintiff was assigned a global assessment of functioning score ("GAF") of 50[2] and was diagnosed with bipolar disorder, NOS, past

---

[2]    "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning . . . ."

history of polysubstance abuse and rule out antisocial personality disorder with paranoid traits.  *PAGEID* 578.

Plaintiff was consultatively evaluated by psychologist Kent Rowland, Ph.D., on April 12, 2010, "to determine the extent of any psychological impairment [plaintiff] may possess." *PAGEID* 621-29.  At the time of the evaluation, plaintiff had not taken psychotropic medication for several years.  *PAGEID* 622.  Plaintiff reported being depressed and having difficulties with mood swings, sleep, memory, and concentration.  *Id*.  Plaintiff also reported being uncomfortable around people, having periods of euthymic mood and rage several times per week, hyperactivity, being unable to sit still, focus on listening to others or follow a television show; he was inclined to participate in risky behavior.  *PAGEID* 623.

Plaintiff drove himself to the evaluation with Dr. Rowland. *PAGEID* 622.  Plaintiff reported that he lived with his girlfriend, with whom he had a "real good" relationship, and that he felt "loving and bonded toward his daughter." *PAGEID* 622-23.  Plaintiff reported that he has no friends with whom he socializes, but spends all of his days visiting with relatives in their homes.  *PAGEID* 624-25.

Plaintiff reported that he had held various part-time jobs, each for no more than a few weeks, and that he left each job before he could be fired.  *PAGEID* 624.  Plaintiff had multiple arrests and incarcerations as a juvenile and has been arrested 30 to 40 times as

---

*Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 436 n.1 (6th Cir. 2012).

an adult for charges of criminal trespass, possession of weapons, discharging firearms, disorderly conduct, and assault.  *PAGEID* 623.

A mental status evaluation suggested mild mental retardation.  It was Dr. Rowland's impression "that either the claimant's emotional agitation is so interrupted that his performance on the MSE that he appeared to be more intellectually incompetent than he is or he was exaggerating symptoms."  *PAGEID* 627

Dr. Rowland assigned a GAF of 50 and diagnosed attention deficit hyperactivity disorder, combined type; bipolar disorder, NOS, primarily depressed, severe without psychotic features; posttraumatic stress disorder; rule out borderline intellectual functioning; and antisocial personality disorder.  *PAGEID* 628.  Dr. Rowland assessed plaintiff's work-related mental abilities as follows:

1. The claimant's mental ability to understand, remember and follow instructions is as evidenced by his interview, mental status evaluation, and history of learning disorder and attention deficits (also considering the possibility of exaggeration of symptoms) is markedly impaired by difficulties with listening skills, concentration, patience, and verbal weakness.

2. The claimant's mental ability to maintain attention, concentration, persistence and pace to perform routine tasks is markedly impaired by the attention deficit disorder and anxiety associated with PTSD.

3. The claimant's mental ability to relate to others, including coworkers and supervisors is extremely impaired by his paranoia toward others, lack of energy, poor motivation, and inability to finish tasks.  He is also prone to rage outburst.

4. The claimant's mental ability to withstand the stress and pressures associated with day-to-day work activity is markedly impaired by his bipolar disorder, PTSD, and ADHD symptoms.

6

    5. The claimant has neither the judgment, insight, or
       cognitive functioning to manage his own funds and will need
       a payee.

*PAGEID* 629.

      Plaintiff was evaluated by Mark E. Weaver, M.D., on May 10, 2010.
*PAGEID* 631-35. Plaintiff demonstrated a blunted affect and depressed
mood, and frequently avoided eye contact. *PAGEID* 634. Plaintiff was
oriented zero out of three times, but was able to recall four out of
four objects in the exam room at fifteen minutes with hesitation. *Id*.
Dr. Weaver diagnosed probable chronic bilateral hand/wrist
sprain/strain, post traumatic, and probable bipolar ADHD by medical
history. *PAGEID* 635.

      Plaintiff was again evaluated at Six Counties, Inc., on May 13,
2010. *PAGEID* 641-48. Plaintiff reported that he sees his daughter
every Wednesday and every other weekend per a court order. *PAGEID*
641. Plaintiff reported that he wakes up between 10:00 am and noon,
"[t]akes shower; eats something; watches television; goes out to
friends [sic] houses, to girlfriends [sic] place; plays with his
daughter; usually eats dinner at girlfriends' [sic] moms house; hangs
out; to bed between 11:00 p.m. to 1:00 a.m." *Id*. Plaintiff had not
worked since November 2008 because he was incarcerated from December
2008 through October 2009. *PAGEID* 642-43. Upon examination,
plaintiff was severely hostile, moderately agitated, had average eye
contact, clear speech, and full affect. *PAGEID* 646. Plaintiff was
assigned a GAF of 56 and was diagnosed with bipolar disorder, NOS,

7

antisocial personality disorder, and borderline intellectual functioning. *Id*.

Aracelis Rivera, Psy.D., reviewed the record for the state agency and completed a mental residual functional capacity assessment and psychiatric review technique form on May 19, 2010. *PAGEID* 651-668. Dr. Rivera diagnosed ADHD, combined type; bipolar disorder, NOS-depressed type without psychosis; posttraumatic stress disorder; and antisocial personality disorder. *PAGEID* 656-62. According to Dr. Rivera, plaintiff was markedly limited in his ability to interact appropriately with the general public and moderately limited in 11 of 20 areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *PAGEID* 651-52. Dr. Rivera opined that plaintiff had marked work related functional limitations in his ability to deal with the public and moderate limitations in all other social related domains. *PAGEID* 653. Plaintiff was mildly impaired in his ability to understand, remember, and follow simple instructions and moderately impaired in his ability to understand, remember, and follow complex instructions. *PAGEID* 654. According to Dr. Rivera, plaintiff retains the ability to function in a non-public work setting where all other social exchanges are minimal, brief, and superficial. *Id*. Plaintiff can perform simple tasks of a repetitive nature in a stable work setting where changes are infrequent and where he does not have to meet strict work production quotas. *Id*.

8

Todd Finnerty, Psy.D., reviewed the record and, on September 30, 2010, affirmed Dr. Rivera's assessment. *PAGEID* 709.

Plaintiff treated at Muskingum Valley Health Centers at least nine times from October 2010 through July 2011. *PAGEID* 770-84. Plaintiff frequently reported sleep problems, irritability and anxiety, and having no energy or motivation.

### III. Administrative Hearing

Plaintiff testified at the administrative hearing that he cannot work because he "blow[s] up under the littlest things," has sudden mood changes, "could just cuss you out for no reason," and reacts without thinking when he gets mad. *PAGEID* 95. Plaintiff is "lucky to get two hours" of sleep a night, feels "down in the dumps" more often than not, does not trust people, and feels like he must always watch his back. *PAGEID* 100, 110, 113. Plaintiff also testified that his wife will not leave their children alone with him. *PAGEID* 97, 103.

Plaintiff has worked several part-time jobs, but never for more than a month at a time because he did not get along with people, would do the opposite of what he was told to do, and had trouble remembering instructions. *PAGEID* 90-93, 112. Plaintiff got into arguments with, threatened, and cussed out his manager and co-workers, but he never got into a physical altercation at work. *PAGEID* 95-97. Plaintiff has "a lot of assaults on [his] record;" he was incarcerated for domestic violence less than a month before the administrative hearing. *PAGEID* 98.

9

Plaintiff lives with his wife and two children. He no longer has a driver's license or car. *PAGEID* 88-90. He is not very close with his family, although his father and cousin drive him places. *PAGEID* 98-99. Plaintiff has had no friends for several years; he was stabbed 17 times by his last friend. *PAGEID* 99. Plaintiff leaves his house "[n]o more than a handful" of times each week. *Id*.

Plaintiff took special education classes and graduated from high school, but he reads at less than a third grade level. *PAGEID* 90, 100-01. Plaintiff testified that he would be unable to read anything in a newspaper, on a grocery shelf, or a note that said: "I went to the grocery store." *PAGEID* 100-01.

During the course of a typical day, plaintiff "[g]et[s] up, take[s] a shower, and whatever goes whatever." *PAGEID* 107. Plaintiff prefers to stay in his house; he paces throughout the day. *PAGEID* 100. When asked if he does anything around the house, plaintiff responded that he "[s]it[s] around." *PAGEID* 107. He does not work in the yard, cook, work on cars, watch television, listen to music, clean, care for his pets, attend church, belong to any social groups, or go to the grocery store by himself. *PAGEID* 101, 107-08. He has tried to watch television, but does not understand what is going on, gets mad, and storms off. *PAGEID* 111. Plaintiff's wife handles their money. *PAGEID* 109.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually determined by the administrative law judge. *PAGEID*

10

116-18.  According to the vocational expert, such an individual would be able to perform plaintiff's past relevant work as a cleaner.  *Id.*

## IV.  Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of "chronic bilateral hand and wrist sprain/strain; a bipolar disorder; an anti-social personality disorder; borderline intellectual functioning; and a substance abuse disorder."  *PAGEID* 63.  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC to

> perform most of the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he cannot climb ropes, ladders or scaffolds and can frequently use his hands for handling and fingering.  He can lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally.  He can sit, stand and walk for six hours total in an eight-hour workday.  Mentally, he can perform simple repetitive tasks in a relatively static environment where there are infrequent changes in duties or processes and where there is no requirement for public contact.  He can only sustain brief and superficial contact with co-workers and supervisors.  He requires an environment where instructions are provided orally and where new tasks can be learned by demonstration.

*PAGEID* 63-65.  Relying on the testimony of the vocational expert, the administrative law judge found that this RFC would not preclude plaintiff's past relevant work as a cleaner.  *PAGEID* 73.  Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act prior to December 5, 2010, the date he attained age 22, or at any time through the date of the administrative decision.  *PAGEID* 73.

11

## V.    Discussion

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

Plaintiff does not challenge the administrative law judge's evaluation of his physical impairments, but does challenge the administrative law judge's evaluation of plaintiff's mental

impairments and credibility.  *Statement of Specific Errors*, PAGEID 789. Plaintiff argues, first, that the administrative law judge erred in evaluating the opinion of Dr. Rowland, the consultative psychologist.  An administrative law judge is required to evaluate every medical opinion, regardless of its source.  20 C.F.R. § 404.1527(c).  However, not every medical opinion is treated equally; the Commissioner's regulations describe three classifications for acceptable medical opinions: (1) nonexamining sources; (2) nontreating sources (or examining sources); and (3) treating sources.  As a one-time consultative psychological examiner, Dr. Rowland is properly classified as a nontreating source.  *See* 20 C.F.R. § 404.1502 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant].").

The Social Security Administration accords the greatest weight to the opinions of treating sources; if an administrative law judge does not give "controlling weight" to the medical opinion of a treating source, he must provide "good reasons" for discounting that opinion. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).  "However, this requirement only applies to *treating* sources." *Ealy*, 594 F.3d at 514 (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (emphasis in original)).  With regard to nontreating sources

13

such as Dr. Rowland, "the agency will simply '[g]enerally [] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined'" him. *Id.* (quoting 20 C.F.R. § 404.1527(d)(1)). *See also Smith*, 482 F.3d at 875. In determining how much weight to give the opinion of a nontreating source, an administrative law judge should consider such factors as "the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in h[is] specialty." *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 404.1527(d)).

Dr. Rowland consultatively evaluated plaintiff on April 12, 2010, "to determine the extent of any psychological impairment [plaintiff] may possess." *PAGEID* 621-29. According to Dr. Rowland, plaintiff has the following work-related mental limitations:

1. The claimant's mental ability to understand, remember and follow instructions is as evidenced by his interview, mental status evaluation, and history of learning disorder and attention deficits (also considering the possibility of exaggeration of symptoms) is markedly impaired by difficulties with listening skills, concentration, patience, and verbal weakness.

2. The claimant's mental ability to maintain attention, concentration, persistence and pace to perform routine tasks is markedly impaired by the attention deficit disorder and anxiety associated with PTSD.

3. The claimant's mental ability to relate to others, including coworkers and supervisors is extremely impaired by his paranoia toward others, lack of energy, poor motivation, and inability to finish tasks. He is also prone to rage outburst.

4. The claimant's mental ability to withstand the stress and pressures associated with day-to-day work activity is

14

markedly impaired by his bipolar disorder, PTSD, and ADHD
symptoms.

5. The claimant has neither the judgment, insight, or
cognitive functioning to manage his own funds and will need
a payee.

*PAGEID* 629.

The administrative law judge recognized Dr. Rowland as a

consultative examiner and expressly considered his opinion, but

afforded "little weight" to the opinion:

> The opinion from Dr. Rowland in the April 2010 consultative
> examination (Exhibit 10F) is given little weight. Although
> Dr. Rowland performed a psychological evaluation complete
> with mental status evaluation and a function-by-function
> mental analysis, his opinion was not consistent with the
> preponderance of the medical evidence. More significant is
> the fact that the doctor found marked and extreme
> limitations when he himself noted that the claimant was
> likely exaggerating his statements. Such an inconsistency
> reduces the probative value of the conclusions. Moreover,
> a comparison of that report with the findings in Exhibit
> 12F (Six County mental health clinic) shows that the
> claimant's alleged symptoms were not so severe in May 2010,
> the month following the consultative examination, and that
> the assessment of the claimant's condition not so severe.
> I also note that the state agency provided specific reasons
> for rejecting the consultant's conclusions (Exhibit 13F).
> I find that the state agency analysis with respect to this
> issue to be well-founded and assign great weight to the
> conclusions and findings expressed therein.

*PAGEID* 72.

The administrative law judge's analysis is sufficiently specific

as to the weight given to Dr. Rowland's opinion and the reasons for

assigning that weight, and it is clear that the administrative law

judge considered the appropriate factors in evaluating Dr. Rowland's

opinion. The administrative law judge also provided good reasons for

15

assigning "little weight" to Dr. Rowland's opinion, and those reasons are supported by substantial evidence.

Dr. Rowland evaluated plaintiff on April 12, 2010, and found that plaintiff's mental status evaluation suggested mild mental retardation.  However, it was Dr. Rowland's impression "that either the claimants [sic] emotional agitation is so interrupted that his performance on the MSE that he appeared to be more intellectually incompetent than he is or he was exaggerating symptoms." *PAGEID* 627. The administrative law judge discounted Dr. Rowland's opinion of marked and extreme limitations, in part, on the basis of Dr. Rowland's assessment that plaintiff may have been exaggerating symptoms.  *PAGEID* 72.  Plaintiff's arguments to the contrary notwithstanding, the Court finds no error in regard to the administrative law judge's evaluation.

As noted in the administrative decision, there are stark differences between plaintiff's evaluation by Dr. Rowland and his evaluation the following month at Six Counties, Inc.  In Dr. Rowland's evaluation, plaintiff reported having no friends, having been arrested 30 to 40 times as an adult, and having been stabbed 17 times two years prior to the evaluation.[3]  *PAGEID* 623, 625, 628.  In the latter evaluation, plaintiff's "limitations of activities of daily living" are reported as: wakes up between 10:00 a.m. and noon; "[t]akes shower; eats something; watches television; goes out to friends [sic] houses, to girlfriend [sic] place; plays with his daughter; usually eats dinner at girlfriends' [sic] moms house; hangs out; to bed

---

[3] The record does not contain treatment records related to a stab wound.

between 11:00 p.m. to 1:00 a.m." *PAGEID* 641.  Plaintiff reported his history of assaults and arrests in the latter evaluation, but apparently also noted that the majority of the assaults occurred during periods of intoxication. *See PAGEID* 645-46 (Plaintiff "has a history of assaults when intoxicated[.]"  "Most of assaults were when he was drinking.").  Also, the latter evaluation does not indicate that plaintiff was stabbed in 2008, but that plaintiff's brother was stabbed in 2008. *PAGEID* 643.  Moreover, the evaluator at Six Counties, Inc., assigned a GAF of 56, which indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *PAGEID* 646. *See also Norris*, 461 F. App'x at 436 n.1 ("Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning . . . .").  Considering the differences in these evaluations and Dr. Rowland's expressed concern that plaintiff was exaggerating his symptoms, the Court concludes that the administrative law judge's reasoning for assigning "little weight" to Dr. Rowland's opinion to be supported by substantial evidence.

Plaintiff has cited some evidence that could support Dr. Rowland's opinion of marked and extreme limitations. *See Statement of Errors*, *see PAGEID* 12-14 (Arguing that, "[e]ven with a conservative interpretation of the record, there was ample evidence that Mr. Pitts had significant social functioning difficulties.").  Nevertheless, it

is well-settled that the Commissioner's decision, if supported by substantial evidence, must be affirmed even if the plaintiff's position is also supported by substantial evidence. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). Because the administrative law judge applied the correct standards to his evaluation of Dr. Rowland's opinion, and because substantial evidence supports his findings, the Court finds no error with the administrative law judge's decision in this regard.

Plaintiff also challenges the administrative law judge's credibility determination. *Statement of Errors*, pp. 14-16. Specifically, plaintiff challenges the administrative law judge's finding that plaintiff "did not receive regular psychological care and that he did not take his medications on a consistent basis." *Id*. at p. 14.

A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). *See also* 42 U.S.C. § 423(d)(5)(A). In evaluating subjective complaints, it must be determined whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). If so, then the evaluator must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to

produce the alleged complaint.  *Id.*; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness's demeanor while testifying.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)).  However, credibility determinations must be clearly explained.  *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).  If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations.  *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge found that plaintiff's "testimony concerning the presence of incapacitating discomfort and associated functional limitations was not credible."  *PAGEID* 70.  In making this determination, the administrative law judge noted, *inter alia*, a lack of objective evidence to support plaintiff's allegations of physical limitations, inconsistencies in plaintiff's daily functioning and alleged symptoms, a lack of regular treatment and psychotherapy, and a failure to take medication on a consistent basis.  *PAGEID* 71.  The administrative law judge noted and followed the appropriate standards, performed an appropriate evaluation of the evidence, and clearly articulated the

19

bases of his credibility determination.  The analysis and credibility determination of the administrative law judge enjoy substantial support in the record.  The Court will not – and indeed may not - revisit that credibility determination.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of*

*Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

April 22, 2014                         _____*s/Norah McCann King*_____
                                        Norah McCann King
                                 United States Magistrate Judge

21